IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDDIE NEASMAN,

              Petitioner,                 No. 2:11-cv-0259 MCE EFB P

     vs.

GARY SWARTHOUT,

             Respondent.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

       Petitioner is a state prisoner without counsel seeking a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at a parole consideration hearing held on July 7, 2009. The matter has been fully briefed by the parties and is submitted for decision.

       As discussed below, the United States Supreme Court has held that the only inquiry on federal habeas review of a denial of parole is whether the petitioner has received "fair procedures" for vindication of the liberty interest in parole given by the state. *Swarthout v. Cooke*, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (per curiam). In the context of a California parole suitability hearing, a petitioner receives adequate process when he/she is allowed an opportunity to be heard and a statement of the reasons why parole was denied. *Id.* at 862 (federal due process satisfied where petitioners were "allowed to speak at their parole

hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 16 (1979).  For the reasons that follow, applying this standard here requires that the petition for writ of habeas corpus be denied on petitioner's due process claim.

**I.  Procedural Background**

Petitioner is confined pursuant to a 1991 judgment of conviction entered against him in the San Bernardino County Superior Court following his conviction for first degree murder with use of a firearm.  Dckt. 1 at 2.  Pursuant to that conviction, petitioner was sentenced to twenty-five years to life plus four years in state prison.  *Id.*

The parole consideration that is placed at issue by the instant federal habeas petition was held on July 7, 2009.  Dckt. 14-1 at 25.  Petitioner appeared at and participated in the hearing. *Id.* at 28, *et seq*.  Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for seven years as well as the reasons for that decision.  Dckt. No. 14-2 at 36-44.

Petitioner first challenged the Board's 2009 decision denying him parole in a petition for writ of habeas corpus filed in the Monterey County Superior Court.  Dckt. No. 14-1 at 2. Therein, petitioner claimed that the Board's 2009 denial of parole was arbitrary and capricious, and that it violated his right to due process because the decision was not support by "some evidence" that petitioner posed a current danger to society.  *Id.* at 3-22.  Petitioner also challenged the Board's reliance on his crime of conviction to find him unsuitable for parole.  *Id.*

The Superior Court denied that petition in a reasoned decision on the merits of petitioner's claims.  Dckt. No. 14-4 at 2-7.  The court reasoned, in part, as follows:

> Petitioner contends that the Board of Parole Hearings determination of July 7, 2009, which became final on November 4, 2009, was improper because of the Board's use of the facts of the life offense to deny parole.  Petitioner was received at the institution on November 21, 1991, after having been convicted of

Murder as fixed in the 1st degree together with a true finding of personal use of a firearm within the meaning of Penal Code § 12022.5.  Petitioner was sentenced to a term of 4 years in Prison plus 25 years to life consecutive.  Petitioner's minimum eligible parole date was fixed as May 20, 2010.  At the conclusion of the hearing, the Board members denied Petitioner's application for a period of 7 years.  Petitioner's counsel at the hearing noted an objection on page 6, lines 24 through 25, continuing over on to page 7, lines 1 through 3, with respect to the Board's use of the standards set forth in Proposition 9, claiming they were ex post facto as applied to Petitioner.  The Board members overruled Petitioner's objection.

On page 9, commencing at line 22, continuing to page 20, line 14, Commissioner Arbaugh reviews the facts of the life crime as taken from the probation report, the appellate court decision affirming Petitioner's conviction and Petitioner's most recent statement regarding the facts of the crime.  A summary of the incident reflects that Petitioner and the victim were married in 1985.  Subsequently, Petitioner determined that the victim was engaging in an affair with his nephew and filed for divorce.  Apparently, Petitioner believed that his home had been burglarized by the victim and that she was in violation of her restraining order.  Petitioner called the police out and after being told that law enforcement would not be pursuing the burglary charge he informed the officer's [sic] he would take care of the problem himself.  Witnesses testified at the trial that Petitioner had threatened to kill both his wife and his nephew.  Petitioner said he never made those statements.  Other witnesses testified that Petitioner made statements to the effect that if he saw his wife and nephew together he would kill them.  When that statement was made the Petitioner appeared calm but intoxicated.  Subsequently, Petitioner saw his wife sitting in a parked car.  He ran over and kicked out the driver's window, pulled the victim's head out of the car by her hair and started to beat her.  Thereafter, Petitioner shot the victim and threatened another victim by firing a round in his direction.  Petitioner was subsequently taken into custody at his girlfriend's residence.

In a statement to police Petitioner indicated he was hurt and full of anger.  He indicated that the victim pulled a gun, they struggled and he took the gun and shot her.

Among his claims, the Petitioner contends he was denied due process by the Board of parole hearings denying his right to his liberty interest on parole.  He claims this right was violated because of the Board's failure to show evidence that he proves to be an unreasonable risk to society.  The California Supreme Court in the cases of *In re Lawrence* (2008) 44 Cal.4th, 1181 and *In re Shaputis* (2008) 44 Cal.4th, 1241 have provided the Board of

3

Parole Hearings and Trial Courts determining habeas corpus matters with guidance.

"The focus is not on whether some evidence supports the Board's characterization of the facts on the record but rather on whether there is 'some evidence' at the core statutory determination that Petitioner remains a current threat to public safety." *In re Shaputis*, *supra* at 1254.

Prior to these most recent decisions the last and most definitive word on the area of law controlling judicial review of Board of Parole Hearings decisions denying a finding of suitability for parole had been set forth in the cases of *In re Rosenkrantz* (2009) 29 Cal.4th 616, and *In re John E. Dannenberg* (2005) 34 Cal.4th 1061. Both of our most recent Supreme Court decisions cite the aforementioned cases with approval.

Penal Code § 3041(b) provides for parole review of inmates such as Petitioner and further provides that such inmates shall be given a release date *unless* the Board determines that the gravity of the current convicted offense is such that consideration of the public safety requires a more lengthy period of incarceration. California Code of Regulations, Title 15, Section 2402(a)(b)(c)(d) sets forth the rules by which the Board is to make its determination. As our high court has stated, parole applicants have an expectation of being granted parole unless the Board finds *in the exercise of its discretion* that the applicant is unsuitable. The operative words are "in the exercise of its discretion." Judicial review of this discretion is limited only to a determination as to whether there is "some evidence" in the record to support the decision. As stated earlier, that "some evidence" must go to the core statutory determination that Petitioner remains a current threat to public safety. As the Supreme Court has stated, this standard of "some evidence" is extremely deferential with respect to the findings of the Board members. The court in *Lawrence* directed the Board to look at the commitment offense within the context of the prisoner's pre and/or post incarceration history as well as his current demeanor and mental state. The commitment offense continues to have strong probative value. In the recent case of *In re Smith* (2009) 171 Cal.App.4th, 1631 at 1639 that court held as follows:

> "The gravity of respondent's commitment offense has continuing predicted value as to current dangerousness in light of her lack of insight into her behavior and refusal to accept responsibility for her personal participation."

The record of the parole consideration proceedings reflect the Board's members concern that Petitioner has not seriously engaged in AA since 1995. The facts of the life crime disclose that Petitioner was under the influence at the time of the commission of

4

the offense and had been engaged in drinking for a significant period of time. The Board members also commented on the lack of Petitioner's relapse prevention plan which was noted on page 47 by Commissioner Wolk. In addition, Petitioner has no realistic post parole support plans with respect to employment or outside support. In response to a comment by Commissioner Arbaugh on page 49, the Petitioner indicated as follows:

"Yeah, that's what I've been doing. I've contacted a couple of churches and I was hoping they would get back to me before, you know, I went to the Board so I would something to show but I haven't received anything yet." *Parole Proceeding Transcript*, page 49, lines 19 through 23.

In his reply to the government's response the Petitioner attaches some documents he has received but the court will not consider those in that those items were not presented to the Board members. It is the members of the Board that must evaluate Petitioner's post parole plans and consider those in determining the viability of Petitioner's request.

The Board members noted that Petitioner had only received 2 CDC 128's and has been regularly working as a clerk, porter, vocational upholstery and carpenter. In addition, the Board members were extremely pleased that Petitioner had no criminal record except two previous traffic infractions.

Doctor Thacker who penned the psychological evaluation was also concerned that Petitioner had not been involved in NA or AA and had no viable post release relapse prevention program in place. As the government noted in their reply:

"The evaluator is not convinced that Mr. Neasman understands the importance of remaining abstinent and the grave results which could occur if he returned to drinking."

All told, the Board members found that Petitioner lacks sufficient insight and expression with respect to the magnitude and horrific nature of the life crime. In essence, Petitioner continues to blame his wife for the murder he committed.

The Board did consider the positive factors which favored parole and made its findings that these did not outweigh the factors surrounding the circumstances of the life crime taking into account the prisoner's pre and post incarceration history. While the decision did not reflect the weighing process of the Board, the Supreme Court in the case of *In re Rosenkrantz, supra,* at 677 clearly states that the Board need not explain its decision or the precise manner in which the specific facts were relevant to parole suitability. This consideration and balancing lay within the discretion of the Board. Here, the Board found that the identified

> facts were probative on the central issue of current dangerousness when considered in light of the full record before the Board.
>
> This Court finds that the Board's observations were valid and consisted of "some evidence" in support of a finding of non suitability with a 7 year denial and does comport with the Supreme Court's most recent directions in the cases of *Lawrence* and *Shaputis*.

*Id.* at 3-7 (emphasis in original).

After the Superior Court denied his petition, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the Fourth Appellate District. Dckt. No. 14-5 at 2. Therein, he claimed that the Board's 2009 decision violated the Ex Post Facto Clause and his right to due process. *Id.* at 6-17. He also claimed that the Board's requirement that he attend a substance abuse program in order to be found suitable for parole violated his First Amendment right to the free exercise of religion. *Id.* at 14-15. The California Court of Appeal summarily denied that petition. Dckt. 14-10 at 2.

Petitioner subsequently filed a petition for review in the California Supreme Court, raising the same claims that he raised in his petition filed in the Court of Appeal. *Id.* at 5. That petition was also summarily denied. *Id.* at 34.

## II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  *Early v. Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

////

////

////

7

**III.  Petitioner's Claims**

    **A.  Due Process**

In petitioner's first three grounds for relief, he claims that the Board's 2009 decision violated his right to due process.  Specifically, he argues that he has a liberty interest in parole, and that the Board improperly relied on "dismissed and unproven charges" and the gravity of his commitment offense to find him unsuitable for parole.  Dckt. No. 1 at 10-17.  The essence of petitioner's arguments is that the Board's 2009 decision to deny him parole for seven years was not supported by "some evidence" that he posed a current danger to society if released from prison, as required under California law and in violation of his federal right to due process.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*,  545 U.S. 209, 221 (2005) (citations omitted).  *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981); *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc).  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby

8

gives rise to a constitutional liberty interest." *Greenholtz*, 442 U.S. at 12).  *See also Allen*, 482 U.S. at 376-78.

California's parole scheme[1] gives rise to a liberty interest in parole protected by the federal due process clause.  *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see Swarthout v. Cooke*, 562 U.S. ___, 131 S.Ct. 859, 861-62 (2011) (per curiam) (stating that the Ninth Circuit's determination that California's parole law creates a liberty interest protected by the federal due process clause "is a reasonable application of our cases.").  However, the United States Supreme Court has held that correct application of California's "some evidence" standard is not required by the federal Due Process Clause.  *Cooke*,131 S.Ct. at 861.  Rather, this court's review is limited to the narrow question of whether the petitioner has received adequate process for seeking parole.  *Id.* at 862.  ("Because the only federal right at issue is procedural, the relevant inquiry is what process [petitioner] received, not whether the state court decided the case correctly.")  Adequate process is provided when the inmate is allowed a meaningful opportunity to be heard and a statement of the reasons why parole was denied.  *Id.* at 862-63 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz*, 442 U.S. at 16.

Here, the record reflects that petitioner was present at his 2009 parole hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's decision to deny parole.  Pursuant to *Swarthout*, this is all that due process requires.  Accordingly, petitioner is not entitled to relief on his due process claims.

////

---

[1]  In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness.  *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

1    **B.  First Amendment Violation**

2        Petitioner's next claim is that the Board's denial of parole violated his rights under the

3    Establishment Clause of the First Amendment because it was based, in part, on his failure to

4    attend Alcoholics Anonymous (AA) or Narcotics Anonymous (NA), which are faith-based

5    programs.  He explains that he does not object to participating in a substance abuse treatment

6    program, but he does object to a program that has "explicit religious content."  Dckt. No. 1 at 18.

7    He alleges that "the Superior Court also violated prisoner's First Amendment Right by enjoining

8    with the Board in requiring prisoner to attend (AA)."  *Id.*  As set forth above, the California

9    Court of Appeal and California Supreme Court summarily denied petitioner's First Amendment

10   claim.  The Superior Court noted in its decision that the Board members were concerned that

11   petitioner had not "seriously engaged in AA since 1995" even though he was "under the

12   influence at the time of the commission of the offense and had been engaged in drinking for a

13   significant period of time," and that the psychologist who prepared petitioner's psychological

14   evaluation was "concerned that Petitioner had not been involved in NA or AA and had no viable

15   post release relapse prevention program in place."  Dckt. 14-1 at 5, 6.

16       "It is beyond dispute that, at a minimum, the Constitution guarantees that government

17   may not coerce anyone to support or participate in religion, or its exercise . . . ."  *Lee v.*

18   *Weisman*, 505 U.S. 577, 587 (1992).  In *Inouye v. Kemna*, 504 F.3d 705, 713 n.7 (9th Cir. 2007),

19   the Ninth Circuit adopted a three part inquiry for determining whether there has been

20   governmental coercion of religious activity.  Those inquiries are: (1) has the state acted; (2) does

21   the state action amount to coercion; and (3) is the object of the coercion religious rather than

22   secular?  504 F.3d at 713.  In the parole suitability context, the first element of the *Inouye*

23   coercion test is satisfied if the Board expressly states that the prisoner must participate in the

24   faith-based program at issue.  *Turner v. Hickman*, 342 F. Supp. 2d 887, 894-95 (E.D. Cal. 2004)

25   (applying "coercion test" to § 1983 action alleging inmates were required to participate in a

26   faith-based treatment program as a condition for release on parole).  The second element is met if

1   the Board advises the prisoner he will not be eligible for parole unless he participates in the

2   particular faith-based program.  *Id.* at 896.[2]

3          During the 2009 hearing, Deputy Commisioner Wolk made the following statement:

4                 Now, speaking for myself, based upon all this conversation we've
                  had about alcohol and your responses and the fact that you were
5                 under the influence when you committed the crime and that you
                  had some abuse problems in the past and the fact that you haven't
6                 been to NA since 1995, that bothers me.  It bothers me because
                  you haven't presented anything to me which shows me that you
7                 have a relapse prevention program in place or that your [sic] active
                  in some type of substance abuse therapy which it causes me to
8                 have concern that you would be able to just pop out in the
                  community and not take a drink.  Do you understand where I'm
9                 coming from?

10  Dckt. No. 14-2 at 7.  Petitioner responded, "I understand what you're saying, yes."  *Id.*  Later,

11  when announcing the Board's decision, Presiding Commissioner Arbaugh made the following

12  statement:

13                You need some more self-help, continue in that.  I mean, you can
                  get it out of substance abuse such as the NA, AA that you're
14                involved in.  That's a very good place to get and gain some of that
                  insight if you follow those steps.

15

16  *Id.* at 40.  Petitioner was also advised by the Board that he had not participated sufficiently in

17  self help, including "substance abuse and anger management."  *Id.*  One commissioner stated,

18  "we also didn't see or hear anything about a substance abuse relapse plan which the Panel feels

19  that you need to make sure you get that established."  *Id.* at 41.  Deputy Commissioner Wold

20  stated that the Board was "concerned about the fact that you haven't been involved in NA or AA

21  since 1995 and until you get back involved in some type of substance abuse therapy, like I told

22  you earlier, it bothers us as far as giving a date to someone who's not prepared to go out there."

23  *Id.* at 42.

24  ////

25  _____

26       [2]  Programs such as AA and NA are "fundamentally religious" within the meaning of the
    third element of the coercion test.  *Turner*, 342 F. Supp. 2d. at 896-97.

1    Petitioner argues that the Board's comments amounted to a "mandate" that he participate

2  in a substance abuse program, specifically AA or NA.  Dckt. No. 15 at 10-11.  He states,

3  "respondent told [petitioner] he had to participate in AA."  *Id.* at 12.  He explains that although

4  he participated in NA and AA in the past, he stopped participating because he was

5  "uncomfortable with the religious aspect."  *Id.* at 11.  Petitioner also states that "all NA/AA

6  programs within the correctional prisons are ran by religious groups . . . thus, making it a

7  mandate for religion, which is prohibited by the First Amendment."  *Id.*  Petitioner "denies that

8  alcohol played a substantial part in the offense."  *Id.*

9    After a review of the relevant record, this court concludes that petitioner has failed to

10  meet the first and second *Inouye* tests described above.  Although the Board panel presiding over

11  petitioner's 2009 suitability hearing discussed the sufficiency of his participation in substance

12  abuse programming, and noted that he had stopped participating in AA and NA, the panel did

13  not indicate that petitioner was required to participate in AA, NA, or any other faith-based

14  substance abuse program in order to be found suitable for parole.  Rather, the Board was using

15  those programs as an example of the type of substance abuse program that petitioner should

16  consider attending.  *Cf. Turner*, 342 F. Supp.2d at 891-92 (the *Inouye* "coercion test" for proving

17  a First Amendment violation is satisfied where a panel member advised prisoner that his

18  participation in NA was a "mandatory" prerequisite to the Board's parole suitability

19  determination).  The comments by the panel members focus on the element of alcohol or

20  substance abuse recovery training and support, not religion, and in no way suggested a

21  requirement that petitioner participate in a faith based program.  Moreover, petitioner never

22  expressed to the Board that his religious beliefs conflicted with participation in the substance

23  abuse programs offered at his institution of confinement.  Under these circumstances, petitioner

24  has failed to demonstrate a First Amendment violation resulting from the Board's remarks about

25  AA/NA programs.  Accordingly, petitioner is not entitled to federal habeas relief on his First

26  Amendment claim.

1    **C.  Ex Post Facto Clause**

2          Petitioner also claims that the Board's use of California Proposition 9 to defer his next

3    parole hearing for seven years violated the Ex Post Facto Clause.  Dckt. No. 1 at 19-20.  He

4    argues, "It is clear that the Board violated the ex post facto clause when it retroactively applied a

5    statute increasing the measure of punishment for offenses committed before its enactment."  *Id.*

6    at 20.

7          California Proposition 9, also known as Marsy's Law, approved by California voters in

8    November 2008, amended California law governing parole deferral periods.  *See Gilman v.*

9    *Davis*, 690 F. Supp. 2d 1105, 1109-13 (E.D. Cal. 2010), *rev'd sub nom. Gilman v.*

10   *Schwarzenegger*, 638 F.3d 1101 (9th Cir. 2011).  Prior to Marsy's Law, the Board deferred

11   subsequent parole suitability hearings to indeterminately-sentenced inmates for one year unless

12   the Board determined it was unreasonable to expect that parole could be granted the following

13   year, in which case the Board could defer the subsequent parole suitability hearing for up to five

14   years.  Cal. Pen. Code § 3041.5(b)(2) (2008).  Marsy's Law amended § 3041.5(b)(2) to impose a

15   minimum deferral period of three years, and to authorize the Board's deferral of a subsequent

16   parole hearing for up to seven, ten, or fifteen years.  *Id.* § 3041.5(b)(3) (2010).

17         The United States Constitution provides that "No State shall . . . pass any . . . ex post

18   facto Law."  U.S. Const. art. I, § 10.  The Ex Post Facto Clause is violated if: (1) state

19   regulations have been applied retroactively to a defendant; and (2) the new regulations have

20   created a "sufficient risk" of increasing the punishment attached to the defendant's crimes.

21   *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003).  Not every law that disadvantages a

22   defendant is a prohibited ex post facto law.  Rather, the retroactive application of a change in

23   state parole procedures violates ex post facto only if there exists a "significant risk" that such

24   application will increase the punishment for the crime.  *See Garner v. Jones*, 529 U.S. 244, 259

25   (2000).

26   ////

13

1    California Penal Code § 3041.5 has been amended several times since the date

2    petitioner's judgment of conviction was entered to allow for longer periods of time between

3    parole suitability hearings.  Ex Post Facto challenges to those amendments have all been

4    rejected.  *See, e.g.*, *Cal. Dept. of Corrections v. Morales*, 514 U.S. 499, 509 (1995) (1981

5    amendment to California Penal Code § 3041.5, which increased maximum deferral period of

6    parole suitability hearings to five years did not violate the Ex Post Facto Clause because it

7    simply altered the method of setting a parole release date and did not create a meaningful "risk

8    of increasing the measure of punishment attached to the covered crimes"); *Clifton v. Attorney*

9    *General Of the state of California*, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (concluding it was not

10   a violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life

11   imprisonment prior to the implementation of California's Determinate Sentence Law in 1977);

12   *Watson v. Estelle*, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (same); *see also Garner,* 529 U.S. at

13   249 (upholding Georgia's change in the frequency of parole hearings for prisoners serving life

14   sentences, from three to eight years, in an action brought pursuant to 42 U.S.C. § 1983);

15   *Wilkinson v. Dotson*, 544 U.S. 74 (2005) (holding that inmates are not required to bring their

16   challenges to the constitutionality of state parole procedures in habeas petitions exclusively, but

17   may pursue their claims in § 1983 actions).  *Cf. Gilman*, 638 F.3d at 1110 (overturning a district

18   court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to

19   prevent the Board from enforcing the amended deferral periods established by Marsy's Law);

20   *Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010) (inmates in class action failed to demonstrate that

21   changes to Michigan's discretionary parole laws, as implemented and applied retroactively to

22   their parole review hearings, violated the Ex Post Facto and Due Process Clauses).

23        In light of these cases, the state courts' rejection of petitioner's claim that the deferral of

24   his next parole suitability hearing for seven years violated the Ex Post Facto Clause is neither

25   contrary to, nor an unreasonable application of federal law.  Similarly, petitioner has failed to

26   cite any controlling federal authority for the proposition that AEDPA itself violates the Ex Post

1   Facto Clause or that changes over the years to California law as it relates to parole suitability

2   hearings violate the Ex Post Facto Clause.  Therefore, petitioner is not entitled to federal habeas

3   relief on his Ex Post Facto claims.

4   **IV.  Request for Evidentiary Hearing**

5          Petitioner requests an evidentiary hearing on his claims.

6          Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

7   following circumstances:

8                  (e)(2) If the applicant has failed to develop the factual basis of a
                   claim in State court proceedings, the court shall not hold an
9                  evidentiary hearing on the claim unless the applicant shows that-

10                         (A) the claim relies on-

11                         (I) a new rule of constitutional law, made retroactive to cases on
                           collateral review by the Supreme Court, that was previously
12                         unavailable; or

13                         (ii) a factual predicate that could not have been previously
                           discovered through the exercise of due diligence; and
14
                           (B) the facts underlying the claim would be sufficient to establish
15                         by clear and convincing evidence that but for constitutional error,
                           no reasonable fact finder would have found the applicant guilty of
16                         the underlying offense[.]

17          Under this statutory scheme, a district court presented with a request for an evidentiary

18   hearing must first determine whether a factual basis exists in the record to support a petitioner's

19   claims and, if not, whether an evidentiary hearing "might be appropriate."  *Baja v. Ducharme*,

20   187 F.3d 1075, 1078 (9th Cir. 1999).  *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

21   2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting

22   an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

23   *Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d

24   706, 708 (9th Cir. 2004) and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  To show

25   that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

26   entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

marks and citation omitted).

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition.  The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief.  Therefore, petitioner's request for an evidentiary hearing should be denied.

## V.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED:  September 12, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE